IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:24CR00300 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| TONIE MITCHELL, | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |

Defendant Tonie Mitchell, through undersigned counsel, submits the instant Sentencing Memorandum for the Court's consideration and requests a sentence, as calculated and reviewed pursuant to Title 18, United States Code §§ 3553(a) and 3661, that is sufficient but not greater than necessary to achieve the statutory goals of sentencing. Counsel attaches the following Memorandum to assist the Court in fashioning Mr. Mitchell's sentence.

                                                     Respectfully submitted,

                                                     <u>/s/ ALEX UGOLINI</u>

                                                     ALEX UGOLINI, 0102594
                                                     MARCUS SIDOTI, 0077476
                                                     Friedman, Gilbert +
                                                     Gerhardstein 50 Public Square, Ste. 1900
                                                     Cleveland, Ohio 44113
                                                     (216) 241-1430
                                                     Attorneys for Defendant

**MEMORANDUM**

I.  **Introduction.**

Defendant Tonie Mitchell ("Mr. Mitchell") now appears for sentencing. Mr. Mitchell has pled guilty to the following:

- Count 2 -- Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

He asks this Court to consider his personal history and characteristics, the circumstances of the offense, and his lack of any criminal record. He asks this Court for a variance downwards from his guideline range of imprisonment, which would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

II.  **Background.**

Mr. Mitchell was born on April 27, 1991, in Kingston, Jamaica. He was raised in a modest but stable household by his mother, Ms. Sutterland, alongside five maternal siblings. His parents were not married, and his father relocated to the United States when Mr. Mitchell was approximately five years old. Despite the distance, his father maintained contact with the family and continued to provide financial support. Mr. Mitchell describes his relationships with both parents as loving and supportive. He did not experience neglect, abuse, or financial deprivation growing up, and he characterized his mother as a hardworking and devoted caregiver. Mr. Mitchell is the father of three children by two different mothers, all of whom reside in Jamaica. He reports daily phone contact with his children and describes himself as a caring and engaged parent. His desire to provide for his children was a key motivation behind his decision to come to the United States in search of more stable and higher-paying work.

A Jamaican citizen, Mr. Mitchell entered the United States in 2023. He initially settled in Florida, where he sought legitimate employment, primarily in the construction and tiling trades. After limited success, and with family ties in Cleveland, he relocated there in or around February 2024. Upon his arrival, Mr. Mitchell lived with his cousin, Leon Berry ("Leon"). Although he later reported earning some income through manual labor, these jobs were informal, infrequent, and offered little financial stability. At Leon's urging, and in an effort to make ends meet, Mr. Mitchell became involved in the illegal conduct at issue in this case.

Physically and mentally, Mr. Mitchell is in generally good health. He has no serious medical conditions, no history of surgery, and no documented history of mental health diagnoses, substance abuse, or treatment. However, he struggles with comprehension and communication. He speaks slowly and has difficulty processing information. While he has never received a formal diagnosis, his educational history and present functioning indicate some cognitive limitations. He was placed in special education programs as a child, was referred to as a "slow learner," and repeated the ninth grade twice before ultimately withdrawing from school in the 11th grade following a violent assault. Despite these challenges, Mr. Mitchell has expressed a desire to earn his GED and develop vocational skills. Since his detention in this case, he has taken classes and programs and worked to improve his reading comprehension.

Key to understanding Mr. Mitchell and his decisions within the last few years is the fact that, as previously referenced, Mr. Mitchell's own father left Jamaica in search of economic opportunity in the United States. He was ultimately able to support his family from afar while maintaining a meaningful parental role. Inspired by that example, Mr. Mitchell attempted to follow a similar path. Unlike his father, however, Mr. Mitchell's journey was derailed by misplaced trust and a vulnerability to manipulation. What he perceived as a viable route to

providing for his family and achieving stability instead resulted in his exposure to criminal conduct and prosecution.

### III.     The Offense Conduct & Sentencing Guidelines.

On April 2, 2024, Cleveland agents responded to a request from the Miami DEA regarding a suspected money pickup operation involving drug proceeds estimated between $100,000 and $200,000. On April 3, 2024, law enforcement identified and surveilled a Nissan Rogue believed to be involved. A subsequent traffic stop by Cleveland Police and Ohio State Highway Patrol resulted in the seizure of approximately $350,795 in cash. Leon Berry was driving, and Mr. Mitchell was in the passenger seat. Both denied ownership of the seized currency and were released pending further investigation.

Authorities continued their investigation, employing cell phone location data and physical surveillance. They identified Mr. Mitchell's and Leon Berry's residence as a duplex at 1056 East 171st Street in Cleveland, Ohio. Three separate trash pulls conducted in May 2024 yielded no additional evidence.

On July 7, 2024, Leon was arrested in Pennsylvania during an FBI-controlled buy-bust operation, involving the seizure of approximately 16 kilograms of cocaine. Leon and Nicoy Roache were charged federally in the Western District of Pennsylvania.

On July 11, 2024, Mr. Mitchell and an undercover investigator arranged the transfer of approximately $125,000 in suspected drug proceeds. On July 16, Mr. Mitchell met the undercover agent at a Kentucky Fried Chicken restaurant parking lot in Cleveland, transferring approximately $125,020 in cash.

On July 29, 2024, agents executed a federal search warrant at Mr. Mitchell's and Leon's residence. In Mr. Mitchell's bedroom, a handgun, ammunition, cell phones, a ledger, and currency

were discovered; in Leon's bedroom, another handgun was recovered. Narcotics were also found in the residence. Once in custody, Mr. Mitchell was forthcoming: he admitted to entering the U.S. through Florida in August 2023 before moving to Cleveland in February 2024, he confirmed he shared the residence with Leon Berry, and he acknowledged the presence of illegal drugs, which he mistakenly identified as Methamphetamine but was confirmed by the Government to be MDMA. Mr. Mitchell also told officers which bedroom was his and which was Leon's, and that Leon bought each of them a firearm. Mr. Mitchell, at that time, told the officers present that Nicoy Roache left the narcotics and that Leon was unaware that the narcotics were there. This is no longer believed to be accurate; information provided to both Counsel for Mr. Mitchell and the Government indicates that Leon knew about the narcotics and was the one who left them in the residence. Mr. Mitchell lied in an attempt to protect his cousin.

      Mr. Mitchell pled guilty to one count, Count 2, which charged Possession with Intent to Distribute a Controlled Substance. The Presentence Investigation Report calculates Mr. Mitchell's offense level beginning with a base offense level of 36, based on his responsibility for possessing approximately 70 kilograms of MDMA (equating to 35,000 kilograms of converted drug weight under the guidelines). The government reserved the right to recommend a two-level enhancement due to the presence of a firearm, which the Probation Officer applied, reasoning that the loaded firearm found in Mr. Mitchell's bedroom was readily accessible and located near suspected drug proceeds and related paraphernalia. Mr. Mitchell retained the right to argue for a two-level safety valve reduction, a mitigating role adjustment of up to four levels, and a two-level reduction for being a zero-point offender. The Probation Officer found Mr. Mitchell ineligible for these reductions due to the firearm possession and his perceived significant role in the offense. Specifically, the Probation Officer concluded Mr. Mitchell did not qualify for the safety valve

because he possessed a firearm in connection with the offense and allegedly did not satisfy the requirement to provide the Government with pertinent, truthful information. Likewise, the Probation Officer declined to recommend a mitigating role adjustment, determining Mr. Mitchell's admitted knowledge of the drug conspiracy was extensive and that "Mr. Mitchell understood the scope of the conspiracy more than Mr. Berry." Finally, Mr. Mitchell was also deemed ineligible for the zero-point offender reduction due to the firearm possession. Mr. Mitchell received a three-level reduction for acceptance of responsibility. Therefore, the Probation Officer determined Mr. Mitchell's total offense level to be 35, resulting in an advisory sentencing guideline range of 168 to 210 months, given his placement in Criminal History Category I.

**IV.    Mr. Mitchell should not receive a two-level enhancement for possessing a firearm during the commission of the offense.**

Mr. Mitchell was assessed a two-level enhancement to his offense conduct pursuant to USSG 2D1.1(b)(1) at Paragraph 43 of his PSR because a firearm was "possessed" during the commission of this offense. The firearm in question was located in Mr. Mitchell's bedroom.

"Once the government establishes by a preponderance of the evidence that "'(1) the defendant actually or constructively "possessed" the weapon, and (2) such possession was during the commission of the offense,' the burden shifts to the defendant to show that it was 'clearly improbable' that the weapon was connected to the offense." *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) (quoting *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir. 1996)). Several factors may be considered in this analysis, including:

> (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the

weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession. *United States v. Kennedy*, 65 F.4th 314, 318 (6th Cir. 2023)

In *United States v. Nance,* the Sixth Circuit upheld the District Court's decision not to apply the enhancement, reasoning in part that in addition to a lack of testimony that the defendant sold drugs from the vehicle, "[a]t the time of the defendant's arrest he was in the parking lot of an apartment building. The firearms were found in the defendant's vehicle. But he was not in close proximity to the vehicle at the time of his arrest. No drugs were found in the vehicle…" 40 Fed.Appx. 59, 68 (6th Cir. 2002). Therefore, the District Court reasoned that it was clearly improbable that the weapons were connected to any offense. See also *United States. v. Peters*, 15 F.3d 540 (6th Cir.1994) (upholding District Court's refusal to apply enhancement where the gun was found in the dresser and the cocaine was found on top of that dresser.)

Mr. Mitchell was never alleged to have been seen with this firearm, or any firearm, during the commission of the offenses he was charged with. There is no evidence or indication that he carried or referred to the firearm in any interaction directly related to drug activity, engaged in any violent activity, or made any threats of violence. No drug trafficking activity, packaging, or manufacturing activity was alleged to have occurred in the bedroom or in the residence, nor was the firearm located near where the narcotics were located in the residence. Mr. Mitchell indicated to the authorities when he was in custody that Leon Berry purchased the firearm for Mr. Mitchell and purchased one for himself; nothing was uncovered in the course of the investigation of this case that Mr. Mitchell did anything with that firearm. In short, there is nothing that connects Mr. Mitchell and this firearm to the offense in question. Mr. Mitchell

clearly did not possess any firearm in connection with the offenses, and he therefore should not be assessed a two-point increase to offense conduct for possessing a firearm.

V.  **Mr. Mitchell should be eligible for a two-level deduction to his offense conduct pursuant to the "Safety Valve" provision in 18 U.S.C. 3553(f).**

The safety-valve provision contained in 18 U.S.C. 3553(f) allows a district court to sentence a criminal defendant below the mandatory-minimum sentence for particular drug offenses and results in a two-level deduction to offense conduct if a defendant meets the following five subsections in § 3553(f):

(1) the defendant does not have—

(A) more than 4 criminal history points...;

(B) a prior 3-point offense...; and

(C) a prior 2-point violent offense...;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon ... in connection with the [instant drug] offense;

(3) the [instant drug] offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the [instant drug] offense ... and was not engaged in a continuing criminal enterprise ...; and

(5) [before] the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the [instant drug] offense…

Mr. Mitchell was not given the benefit of the safety valve provision in the PSR for two reasons: Mr. Mitchell (1) "possessed a firearm in connection with the offense", due to the firearm being located inside his bedroom, near money and a ledger, and (2) Mr. Mitchell not satisfying the requirement to provide the government with pertinent information concerning this offense.

Since the PSR was authored, Mr. Mitchell has satisfied the requirement to provide the government with pertinent information concerning this offense. Additionally, Mr. Mitchell, as outlined in the above section, did not possess a firearm in connection with this offense. Mr. Mitchell readily admits that he did have a firearm in his bedroom, and that money and a ledger were also seized in his bedroom. However, there were no narcotics located in the same vicinity as the firearm, and there is no evidence to suggest that Mr. Mitchell ever used or carried this firearm at any point during this offense. Leon provided the firearm to Mr. Mitchell; no evidence has been tendered that indicates that Mr. Mitchell wanted, needed, or possessed the firearm for anything related to this offense.

As such, he meets every element identified to qualify for safety valve relief, and he should therefore receive a two-level deduction to his offense conduct.

**VI.  Mr. Mitchell should be eligible for either a four-level, three level, or two level deduction to his offense level because he had a mitigating role in the offense.**

Section 3B1.2 of the Sentencing Guidelines authorizes a sentencing court to adjust a defendant's offense level if he had a mitigating role in the offense. Specifically, it permits a four-level reduction if the defendant was a "minimal participant," which is defined as someone who is "plainly among the least culpable of those involved in the conduct of a group." The application note further provides that "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." This section also provides for a two-level reduction if the defendant was a "minor participant," which is defined as someone who is "less culpable than most other participants in the criminal activity, but whose role could not be described as minimal", and a three-level reduction if the defendant falls somewhere in between. U.S.S.G. § 3B1.2 and cmt. n.4, n.5. The relative culpability of the defendant is measured only in comparison to those persons who

actually participated in the criminal activity, rather than against other individuals who commit similar crimes. *United States v. Arias-Mercedes*, 901 F.3d 1, 6 (1st Cir. 2018) (no "need to compare a defendant's conduct with the conduct of hypothetical participants in similar offenses").

Application Note 3(C) to §3B1.2 provides a non-exhaustive list of factors for the court to consider in determining whether to apply a mitigating role adjustment and, if so, the amount of the adjustment: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity.

Mr. Mitchell is the appropriate candidate to receive a reduction to his offense level pursuant to this section. First, and with all due respect to Mr. Mitchell, he is not a criminal mastermind. Mr. Mitchell struggles with communication and comprehension, and his ability to read and write is severely limited. Separately from Mr. Mitchell's limitations, he was clearly unaware of the scope and structure of the criminal activity – he was not aware of the type of substance present in his residence, nor was he given any instructions or told to do anything with it. Mr. Mitchell also did not plan or organize anything related to his offense, nor did he exercise any decision-making authority. Mr. Mitchell lived in his residence with his cousin, Leon Berry, who was the primary culpable actor in this offense and who was arrested in Pennsylvania in the middle of the investigation of this matter while transporting roughly 16 kilograms of cocaine.

The Probation Officer's response to this objection stated that there was no evidence to support that Mr. Mitchell was a minor or minimal participant because "Mr. Mitchell understood the scope of the conspiracy more than Mr. Berry in regard to the 70 kilograms of MDMA found inside the residence" and because Mr. Mitchell "continued his criminal conduct" after Mr. Berry was arrested in Pennsylvania. First, as referenced above, information provided to both Counsel and the Government strongly indicate that Mr. Mitchell not only was in the dark about the narcotics in his residence, but about the source of the narcotics and that his cousin intended to store them in the shared residence. Second, Mr. Mitchell did continue engaging in criminal conduct after Mr. Berry was arrested; however, the continued criminal conduct consisted of couriering money. Mr. Mitchell's ill-guided continuance of transporting money does not negate that Mr. Mitchell still did not understand the scope and structure of the criminal activity; perhaps out of all participants in this offense, he understood it the least. Mr. Mitchell, further, did not plan or organize anything, he exercised almost no decision-making authority. Leon knew that Mr. Mitchell needed money and he knew that Mr. Mitchell trusted him and would assist him however he needed. It was Leon that kept Mr. Mitchell in the dark about who was involved and what the true extent of the criminal activity at issue in this case was, not the other way around.

Mr. Mitchell's personal activities, while serious, pale in comparison with the activity of Leon. Mr. Mitchell was a minimal participant who acted at the discretion of others and he is the least culpable of all those involved in this offense.

**VII. Mr. Mitchell should be eligible for a two-level deduction to his offense conduct pursuant to the "Zero-Point Offender" provision in U.S.S.G § 4C1.1.**

Tonie Mitchell meets all of the listed criteria to be eligible for a two-level deduction to his offense conduct pursuant to the "Zero-Point Offender" provision of the sentencing guidelines. Mr. Mitchell was not given the benefit of this provision because of the presence of a firearm in

his home. As addressed above, the firearm in question was not connected to these offenses. As such, he meets every element identified to qualify for relief under this provision, and he should therefore receive a two-level deduction to his offense conduct.

**VIII. A Sentence Below the Guideline Range is Warranted Under the 18 U.S.C. § 3553(a) Factors.**

Mr. Mitchell requests this Honorable Court to sentence him to a term of 84 months of imprisonment. Pursuant to Title 18, United States Code, Section 3553(a), when considering what sentence to impose, the Court must consider the following factors when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant:

While the offense is undoubtedly serious, Mr. Mitchell's role was notably influenced by others around him—specifically, his cousin Leon, who introduced him to criminal activities shortly after Mr. Mitchell's arrival in the United States. Mr. Mitchell was driven by economic desperation and a sincere desire to support his children and family back in Jamaica, as his father had done before him. Mr. Mitchell's involvement in this offense, though serious, is reflective more of his vulnerabilities than any predisposition to criminality. He has no prior criminal history and his education and mental capabilities are limited. He had no friends or other acquaintances that he knew in this country. Mr. Mitchell was easy prey for his co-defendants, who used him for their own purposes. Mr. Mitchell asks this Court to consider these factors when fashioning his sentence.

Mr. Mitchell, with the proper mechanisms and controls in place, has the capacity and the requisite tools and skills to live a positive, productive life upon his release from custody. He

accepts his responsibility for his wrongdoing and is intrinsically motivated to better himself while he is in custody.

    2.    The Need for the Sentence Imposed to Promote Certain Statutory Objectives:

        (A)    To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.
        (B)    to afford adequate deterrence to criminal conduct;
        (C)    to protect the public from further crimes of the defendant; and
        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Mr. Mitchell is 33 years old, did not physically harm or threaten anyone, and was driven, albeit mistakenly, out of a desire to secure a stable life for himself and his family. Regardless, Mr. Mitchell committed serious crimes, one for which he is guaranteed to serve a significant number of years reflecting on. The circumstances and severity of this offense, however, do not warrant a period of incarceration within the guideline range of imprisonment. Mr. Mitchell has a desire to better himself while incarcerated and lead a positive, productive life and be reunited with his family. Mr. Mitchell plans to take advantage of every program he can.

Section 3553(a) also directs the court to take into consideration:

1. The Kinds of Sentences Available.
2. The Kinds of Sentences and Sentencing Range Established
3. Pertinent Policy Statements Issued by the Sentencing Commission
4. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct; and
5. The Need to Provide Restitution to Any Victims of the Offense.

Defendants with similar charges to Mr. Mitchell with a final offense level of 35 and a Criminal History Category of I have an average length of imprisonment imposed of 97 months. Mr. Mitchell should not receive a two-point enhancement for the firearm and should qualify for safety-valve relief, a mitigatory role reduction, and a zero-point offender reduction. If the Court were to find these positions well-taken, Mr. Mitchell's final offense level would be in between

25-27 (depending on the level of the mitigatory role reduction given). With this offense level, Mr. Mitchell's guideline range of imprisonment would be:

(a) If 25, 57-71 months;

(b) If 26, 63-78 months;

(c) If 27, 70-87 months.

In sum, and with all other necessary considerations taken into consideration, a sentence within any of these ranges would be sufficient but not greater than necessary to achieve the statutory goals of sentencing and to account for the gravity of Mr. Mitchell's conduct, while also avoiding a sentence disparity among similarly situated defendants.

IX. **Conclusion.**

In consideration of the foregoing factors, a sentence as outlined above is proper in this case.

Respectfully Submitted,

/s/ Alex Ugolini
ALEX UGOLINI, 0102594
MARCUS SIDOTI, 0077476
Friedman, Gilbert + Gerhardstein
50 Public Square, Ste. 1900
Cleveland, Ohio 44113
 (216) 241-1430
Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Alex Ugolini
Alex Ugolini
Attorney for Defendant