IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:24-CR-300 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| TONIE NENO MITCHELL, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, through its undersigned counsel, Carol M. Skutnik, Acting United States Attorney, and James P. Lewis, Assistant United States Attorney, respectfully submitting its sentencing memorandum.

For the reasons discussed below, the government concurs with the Sentencing Guidelines calculation in the PSR and recommends that the Court impose a sentence at the lower end of that range.

I.  **SENTENCING GUIDELINES CALCULATION**

    A.    **THE PSR CORRECTLY APPLIES A TWO-LEVEL ENHANCEMENT FOR POSSESSION OF FIREARM UNDER U.S.S.G. § 2D1.1(B)(1).**

The Guidelines provide for a two-level enhancement in drug trafficking cases "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). To support this enhancement, the government must prove that the defendant "possessed" the weapon "during the commission of the [drug] offense." *United States v. McCloud*, 935 F.3d 527, 531 (6th Cir. 2019). Once the government makes this showing, the burden shifts to the defendant to prove, by "evidence, not mere argument," that "it is clearly improbable that the weapon was connected to the offense." *Id.* (citations omitted). "There is no need for the government to

demonstrate the connection between the firearm and the crime to shift the burden [to the defendant]." *United States v. Pryor*, 842 F.3d 441, 453 (6th Cir. 2016).  Instead, the mere presence of a firearm during a drug trafficking offense is sufficient to shift the burden.  *Id.*

Here, the facts easily establish that Mitchell possessed a firearm during his drug trafficking offense, thus shifting the burden to him to show why it is "clearly improbable that the weapon was connected to the offense."  *See McCloud*, 935 F.3d at 531.  On July 29, 2024, law enforcement executed a search warrant at Mitchell's residence (the downstairs unit of a duplex house) and found approximately 70 kilograms of vacuum-sealed MDMA in the living room closet.  (R. 23: PSR, PageID 106-07).  The PSR estimates that the street value of the MDMA was approximately $18,000 per kilogram, netting a total street value of more than $500,000.  (*Id.*).  In Mitchell's bedroom, law enforcement found a loaded Ruger 9mm handgun, six boxes of 9mm ammunition, a ledger notebook listing drug prices, eight cell phones, and $50,092 in drug cash.  (*Id.*; R. 1-1: Complaint Affidavit, PageID 4-10; Plea Agreement ¶ 5).  Mitchell admitted on scene that this was his bedroom, that the Ruger 9mm pistol belonged to him, and that he needed the firearm for protection.  (R. 23: PSR, PageID 107; R. 1-1: Complaint Affidavit, PageID 9-10).  Those facts, which do not appear to be in dispute, show that Mitchell possessed a firearm during the drug offense to which he pled guilty.  The burden therefore shifts to him to present "evidence, not mere argument," as to why it was "clearly improbable that the weapon was connected to the [drug] offense."  *See McCloud*, 935 F.3d at 531.

Mitchell has failed to meet this burden, and his arguments to the contrary are all meritless.

First, to the extent Mitchell argues that the Ruger 9mm firearm was not used or possessed in connection with his drug offense, *see* (R. 23: PSR, PageID 121-22) (Mitchell's PSR objection

#1), that argument fails. As explained above, "[t]here is no need for the government to demonstrate the connection between the firearm and the [drug] crime to shift the burden [to the defendant]." *Pryor*, 842 F.3d at 453. But even if such a showing were required, the fact that the loaded firearm was found in the same bedroom as Mitchell's drug cash, cell phones, and ledger (and in the same downstairs living unit as more than $500,000 in vacuum-sealed MDMA) would easily show a connection between Mitchell's possession of that firearm and his drug offense. *See United States v. Thomas*, No. 23-5010, 2024 WL 182324, at *3 (6th Cir. Jan. 17, 2024) (explaining that a defendant's possession of "two concealable handguns that were loaded and stored in close proximity to the fruits of his drug trafficking—*significant* amounts of cash . . . is the typical pattern under which we link a found firearm to drug trafficking under the Guidelines").

 Mitchell's other argument—that the firearm enhancement should not apply because he "had no disabling convictions and lawfully owned a firearm," *see* (R. 23: PSR, PageID 122) (Mitchell PSR Objection #1)—is also without merit. For one, the Sixth Circuit has explained that the firearm enhancement can apply even when the defendant was legally allowed to possess a firearm. *See United States v. Ayoub*, 701 Fed. App'x 427, 449 (6th Cir. 2017) ("The fact that Ayoub was legally permitted to carry his weapon perhaps even made it easier for him to utilize it in furtherance of the conspiracy because he could carry unrestricted."); *United States v. McCurry*, 220 Fed. App'x 411, 413 (6th Cir. 2007) ("[O]ne can come into possession of a gun for a perfectly legitimate reason and still use it or have it available for use during a drug trafficking crime."). Moreover, the government notes that Mitchell appeared to lack any legal immigration status in the United States at the time of the search warrant, meaning that it was likely illegal for him to possess any firearm under federal law. *See* 18 U.S.C. § 922(g)(5)

(prohibiting an "alien [who] is illegally or unlawfully in the United States" from possessing a firearm that traveled in interstate commerce); (R. 23: PSR, PageID 107, 111) (reporting that Mitchell "was present in the United States illegally," that there is an ICE detainer pending against Mitchell, and that although Mitchell was married, there is no record of Mitchell submitting a change of status after his marriage).

In short, Mitchell possessed a firearm during his drug offense, and he has failed to meet his burden of showing why it is "clearly improbable that the weapon was connected to [his drug] offense." *McCloud*, 935 F.3d at 531. The Court should therefore apply the two-level enhancement, as recommended by the PSR.

> B. THE PSR CORRECTLY DETERMINED THAT MITCHELL IS NOT ELIGIBLE FOR SAFETY VALVE AND ZERO-POINT OFFENDER REDUCTIONS DUE TO HIS POSSESSION OF A FIREARM IN CONNECTION WITH THE OFFENSE.

The PSR also correctly determined that Mitchell is not eligible for safety valve and zero-point offender reductions under the Guidelines. For both reductions, Mitchell must satisfy a list of criteria, including that he "did not . . . possess a firearm . . . in connection with the offense." *See* U.S.S.G. §§ 4C1.1(a)(7); 5C1.2(a)(2). (The government does not dispute that Mitchell satisfied all other requirements for safety valve and zero-point offender. Mitchell's possession of a firearm appears to be the only safety valve/zero-point offender requirement that Mitchell failed to satisfy.). It is Mitchell's burden to show that he is eligible for these two reductions, not the government's burden to show that he is ineligible. *See United States v. Stewart*, 306 F.3d 295, 327 n.19 (6th Cir. 2002).

4

The analysis here is largely the same as above.[1] Law enforcement found the loaded Ruger pistol in Mitchell's bedroom along with six boxes of 9mm ammunition, a ledger notebook listing drug payments and prices, eight cell phones, and $50,092 in drug cash. Mitchell admitted this was his bedroom, that the firearm was his, and that he had the firearm for protection. The 70 kilograms of vacuum-sealed MDMA that Mitchell pled guilty to possessing were found nearby in the living room closet. Those facts easily establish a connection between Mitchell's possession of the Ruger handgun and his drug trafficking crime. *See Thomas*, No. 23-5010, 2024 WL 182324, at *3. It is Mitchell's burden to show otherwise as to these two Guidelines reductions, which he has failed to do.

Mitchell is therefore ineligible for safety valve and zero-point offender reductions.

C.     THE PSR CORRECTLY DECLINED TO APPLY A REDUCTION FOR MITIGATING ROLE.

Section 3B1.2 of the Sentencing Guidelines provides a four-level reduction if the defendant was "a minimal participant in any criminal activity;" a two-level reduction if the

---

[1] The Sixth Circuit has recognized that some daylight exists between the two-level § 2D1.1(b)(1) firearm enhancement and a defendant's eligibility for safety valve. *See United States v. Bolka*, 355 F.3d 909, 914 (6th Cir. 2004) ("The application of a § 2D1.1(b)(1) sentence enhancement [for possession of a firearm during a drug offense] does not necessarily preclude the application of a § 5C1.2(a) 'safety valve' reduction."). But the Sixth Circuit has also recognized that this would require a fairly unusual situation. *See id.*; *United States v. Thomas*, No. 23-5010, 2024 WL 182324, at *2 (6th Cir. Jan. 17, 2024) (collecting cases and remarking that "[w]hether the difference in who bears the burden for a § 2D1.1(b)(1) firearm enhancement and a § 2D1.1(b)(18) safety-valve reduction means that the application of the former automatically makes a defendant ineligible for the latter is a question we have answered inconsistently.").

This Court, however, need not address how much daylight exists between the two-level firearm enhancement in § 2D1.1(b)(1) and a defendant's eligibility for safety valve/zero-point offender, because the facts here easily show that Mitchell possessed a firearm in connection with the drug offense to which he pled guilty.

defendant was a "minor participant;" and the option for the court to grant a three-level reduction for "cases falling between" those two.  U.S.S.G. § 3B1.2.  The defendant bears the burden of proving by a preponderance of the evidence that he qualifies for a role reduction.  *United States v. Guerrero*, 76 F.4th 519, 532 (6th Cir. 2023).

Because mitigating role adjustments are "based on the totality of the circumstances" and "heavily depend[] on the facts of the particular case," the Guidelines provide five non-exhaustive factors for sentencing courts to consider in deciding whether to grant a reduction, including:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; [and]
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, Applic. n.3(C).  The Guidelines also state that performing "an essential or indispensable role in the criminal activity is not determinative" and will not foreclose a mitigating role adjustment if the defendant was "substantially less culpable than the average participant."  *Id.*  Nevertheless, "[a] defendant does not qualify for a mitigating role reduction merely because someone else planned the scheme and made all the arrangements."  *United States v. Sheafe*, 69 F. App'x 268, 270 (6th Cir. 2003) (citing *United States v. Miller*, 56 F.3d 719, 720 (6th Cir. 1995)).

Here, Mitchell has failed to meet his burden of showing that he should receive a role reduction under § 3B1.2. Importantly, Mitchell's involvement in the drug trafficking conduct here appeared to be ongoing, relatively sophisticated, and at a higher-level than typical street dealing. As discussed in the PSR, in April 2024, police traffic-stopped Mitchell and his roommate as part of an undercover DEA operation to receive drug money, and in the backseat of the vehicle, found a Home Depot box containing $350,795 in suspected drug cash. (R. 23: PSR, PageID 103-04). On July 9, 2024, as part of another DEA operation, Mitchell departed his duplex residence with $125,020 in drug cash and delivered that cash to an undercover agent in the parking lot of a fast food restaurant in Cleveland. (*Id.*, PageID 105-06). That drug cash exchange also appeared to be somewhat sophisticated, with Mitchell and the undercover agent using the serial number of a dollar bill (sometimes called a "token") to verify each other's identities. *See* (*id.*). Then, on July 29, 2024, DEA agents executed a search warrant at Mitchell's residence, resulting in the seizure of 70 kilograms of vacuum-sealed MDMA, over $50,000 in drug cash, firearms (including the loaded Ruger pistol in Mitchell's bedroom that he acknowledged was for protection), numerous cell phones, and a drug ledger listing prices and payments. (*Id.*, PageID 106-07). Those facts, when taken together, indicate that Mitchell's involvement in the drug activity here was ongoing and at a higher level, and that a role reduction is not appropriate.

II. **AFTER CONSIDERING THE SECTION 3553(A) SENTENCING FACTORS, THE COURT SHOULD IMPOSE A SENTENCE AT THE LOWER END OF THE GUIDELINES RANGE CALCULATED BY THE PSR.**

For the following reasons, the government recommends that the Court impose a sentence at the lower end of the Guidelines range calculated by the PSR.

Starting with nature and circumstances of the offense, Mitchell's conduct here involved a very large quantity of drugs: 70 kilograms of vacuum-sealed MDMA bags, with an approximate

7

street value of more than $500,000.  *See* (R. 23: PSR, PageID 107).  Mitchell was also involved in the laundering of large amounts of drug money.  As detailed in the PSR, police stopped Mitchell and his roommate in April 2024 as part of a DEA undercover drug money pickup operation, and in their vehicle, found over $350,000 in cash in a Home Depot box.  (*Id.*, PageID 103-04).  On July 9, 2024, Mitchell personally delivered over $125,000 in drug cash to an undercover DEA agent at a parking lot in Cleveland.  (*Id.*, PageID 105).  And when law enforcement searched Mitchell's residence on July 29, 2024, they found 70 kilograms of vacuum-sealed MDMA, a loaded pistol that Mitchell had for protection, a drug ledger, over $50,000 in drug cash, and numerous cell phones.  (*Id.*, PageID 106-07).  Those facts all indicate that Mitchell's drug trafficking conduct was ongoing, large-scale, and at a high level of sophistication, which supports a within-Guidelines sentence,

     Regarding Mitchell's personal history and characteristics, he is a Jamaican national who entered the United States illegally in approximately August 2023 "via a boat from the Bahamas." (R. 23: PSR, PageID 107).  Although the PSR reports that Mitchell was married 2024, the PSR also indicates that Mitchell appears to lack any legal immigration status in the United States. (*Id.*).  The fact that Mitchell became involved in higher-level drug trafficking within a year of entering the United States illegally is, in the government's view, an aggravating factor.  On the other hand, the government acknowledges that Mitchell has no criminal record, and that he accepted responsibility relatively early in this case, which the government views as mitigating factors.

     Finally, as to the remaining Section 3553(a) factors, the government highlights the importance of deterrence (both general and specific).  As discussed above, Mitchell appeared to be part of ongoing drug trafficking at a relatively high level, and his conduct involved the

8

possession and transfer of large amounts of drug money.  This indicates that that financial gain was a primary motive for the criminal conduct, and that the conduct involved significant planning and organization.  In the government's view, that makes this case a strong candidate for deterrence, both specific and general.

## **CONCLUSION**

For the reasons set fort above, the government recommends that the Court adopt the Sentencing Guidelines calculation in the PSR and impose a sentence at the lower end of that range.

    Respectfully submitted,

    CAROL M. SKUTNIK
    Acting United States Attorney

By:   /s/ James P. Lewis
    James P. Lewis (MD: 1412170148)
    Assistant United States Attorney
    United States Court House
    801 West Superior Avenue, Suite 400
    Cleveland, OH 44113
    (216) 622-3958
    James.Lewis@usdoj.gov